UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-MJ-03998-VALLE

UNITED STATES OF AMERICA,

v.

MALONE LAM,

    Defendant.
_____/

**DETENTION ORDER**

On September 20, 2024, this Court held a hearing pursuant to 18 U.S.C. § 3142(f) to determine whether Defendant Malone Lam ("Defendant") should be detained prior to trial.[1] The Government orally moved to detain Defendant on the grounds that he presents both a danger to the community and a serious risk of flight. Having considered the factors enumerated in 18 U.S.C. § 3142(g), the Government's proffer, the testimony of the law enforcement agent, the facts contained in the Pretrial Services Report ("PSR"), and the arguments of counsel, the Court finds by clear and convincing evidence that Defendant poses a danger to the community. The Court also finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Defendant's appearance in this case if Defendant is released prior to trial. Therefore, the Court orders that Defendant be detained prior to trial and until the conclusion thereof.

In accordance with 18 U.S.C. § 3142(i)(1), the Court makes the following findings of fact and statement of reasons for the detention:

    1.    Defendant is charged by Indictment in the District of Columbia with one count of

---

[1] The audio recording of the proceeding is incorporated by reference.

conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and one count of laundering of monetary instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). If convicted, Defendant faces up to 20 years' imprisonment per count and a fine of up to $250,000 or twice the pecuniary gain. Defendant's estimated Sentencing Guideline range is between 168-210 months in prison.

2. The evidence against Defendant is substantial. At the detention hearing, the Government proffered evidence and a law enforcement agent testified that:

   a. On August 18 and 19, 2024, Defendant and his co-conspirators stole approximately $230,000,000 in cryptocurrency from a victim in Washington, D.C. They targeted the victim because they identified him as a high net-worth investor from the early days of cryptocurrency.

   b. Defendant and his co-conspirators called the victim and impersonated Google Support team members. They told the victim that there was a hack attempt and that they needed to shut down his Google account. They ultimately convinced the victim to provide the security codes to his Google account. Defendant then accessed the victim's One Drive and Gmail account to locate his cryptocurrency assets. Defendant further scoured the victim's private accounts looking for additional information.

   c. Defendant located Gemini cryptocurrency exchange records in the victim's Google accounts, and the conspirators agreed that one of them would call the victim back and pose as a Gemini Crypto Exchange Security team member. In doing so, they convinced the victim that his cryptocurrency accounts had also been compromised. Initially, they convinced the victim to transfer a small portion (approximately $3,000,000) of his cryptocurrency to a crypto wallet

  controlled by Defendant. The group then convinced the victim to download a remote desktop connection program for his own "security," which allowed Defendant to log into the victim's computer and steal over 4,000 bitcoin. In total, Defendant and his co-conspirators stole more than $230,000,000 in cryptocurrency and laundered it through various cryptocurrency exchanges and mixers.

d. To complete the theft, Defendant and his co-conspirators were communicating in real-time over Discord and Telegram. The Government is in possession of screen recordings capturing Defendant using the "$$$" Telegram handle and "Anne Hathaway" Discord display name to discuss strategies to manipulate the victim into allowing access to his cryptocurrency holdings.

e. The Government also possesses numerous documents and photos attributing the $$$ Telegram handle to Defendant. More specifically, Defendant sent photos of himself and his brand-new white sports car with his name painted on the side to his friends using the $$$ Telegram handle. Additionally, in a recorded post-*Miranda* interview, Defendant admitted to using the $$$ Telegram handle, admitted to committing the cryptocurrency theft with his co-conspirators, and admitted to dividing up the stolen funds and laundering it through various cryptocurrency exchanges.

f. After laundering the stolen funds, Defendant began a spending spree of the victim's assets. Government surveillance captured Defendant at Los Angeles nightclubs spending hundreds of thousands of dollars per night and gifting handbags valued at tens of thousands of dollars. Management at the nightclubs

      informed the Government that Defendant attempted to pay in cryptocurrency and was spending approximately $400,000-$500,000 per night. For example, the Government is in possession of a receipt from a Los Angeles nightclub where Defendant spent $569,528.39 in one night.

g. Defendant also spent the victim's funds purchasing a collection of luxury automobiles, some valued as high as $3,000,000. In the post-*Miranda* interview, Defendant admitted to purchasing 31 luxury automobiles, 22 of which have yet to be located by law enforcement.

h. On September 10, 2024, Defendant and his friends flew on a private jet from Los Angeles to Miami to continue the spending spree. Defendant rented multiple homes in Miami, including a residence on Hibiscus Island and two other luxurious homes near the water, one of which Defendant was paying $68,000 a month in rent. Defendant continued spending the victim's funds in Miami nightclubs, on jewelry, and on cars. Law enforcement arrested Defendant on September 18, 2024.

i. From two of his residences in Miami, law enforcement seized nine luxury automobiles and luxury watches, one of which was purchased for $1.8 million. Law enforcement also recovered bills of sale at Defendant's Miami residence for some of these automobiles. Many of the automobiles Defendant purchased, however, have yet to be located, including the automobile that has "Malone" painted on the side.

j. In the post-*Miranda* interview, Defendant admitted to doing additional hacks and making millions from those separate cryptocurrency fraud schemes, which

he stated have supported his entire lifestyle since arriving in the United States in October 2023.

k. Finally, on September 18, 2024, one of Defendant's co-conspirators (Jeandiel Serrano) was arrested at Los Angeles International Airport. Shortly thereafter, the co-conspirator's girlfriend informed Defendant of the arrest. Defendant then immediately deleted his Telegram account, evidencing Defendant's potential to obstruct justice.

3. The evidence demonstrates the serious nature of this offense. Defendant, a 20-year-old foreign national, stole millions of dollars in cryptocurrency, laundered the stolen funds in sophisticated ways, and spent the proceeds of the fraud to fund a lavish lifestyle in Los Angeles and Miami.

4. Defendant's personal characteristics also support pretrial detention. The Court incorporates and makes part of this Order the facts contained in the PSR. Defendant is a Singaporean citizen and has no legal status in the United States. Defendant was in the United States via the visa waiver program, which provides tourists 90 days. While in the United States, Defendant had no permanent residence, was not lawfully employed, and was paying for his lavish lifestyle with stolen funds. Moreover, Defendant has substantial assets that have yet to be located, which provide him with the financial means to flee. Lastly, if convicted, Defendant faces a lengthy term of imprisonment, thus giving him a strong incentive to flee.

5. Based on the above findings of the fact, the nature of the charged offenses, and the overall weight of the evidence, the Court finds by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance as required. The Court also finds by clear and convincing evidence that Defendant poses a

danger to the community due to his willingness to obstruct justice.

6. Accordingly, the Court hereby directs that:

   a. Defendant be detained without bond;

   b. Defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

   c. Defendant be afforded reasonable opportunity for private consultation with his counsel; and

   d. On Order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined, deliver Defendant to a United States Marshal for the purpose of transporting him to Washington, D.C. for appearance in connection with court proceedings in the District of Columbia.

**DONE AND ORDERED** in Chambers, Miami, Florida, on September 24, 2024.

_Alicia O. Valle_
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc.   Pretrial Services
      U.S. Marshals Service
      All Counsel of Record